Filed 9/19/23  P. v. Gross CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D080743 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCE406399) |
| ABRAHAM ELIEZER GROSS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Kathleen M. Lewis, Judge.  Affirmed.

Heather E. Shallenberger, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters and Charles C. Ragland, Assistant Attorneys General, Steve Oetting and Michael Dolida, Deputy Attorneys General for Plaintiff and Respondent.

Abraham Eliezer Gross pleaded guilty to a charge of unlawfully taking and driving without the owner's permission a vehicle valued over $950.  (Veh. Code, § 10851, subd. (a).)  The court placed him on two years of probation.  It

also imposed certain fines, fees and assessments, and several alcohol-related probation conditions.

Gross contends: (1) the court abused its discretion in ordering the fines fees and assessments without considering his ability to pay under *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*); and (2) his alcohol-related probation conditions are invalid under *People v. Lent* (1975) 15 Cal.3d 481 (*Lent*).  We affirm.

## BACKGROUND

According to the probation report, Gross took a vehicle from the victim. When police recovered the vehicle from Gross, they found inside of it "a piece of plastic which contained a black substance (.24 gross grams), a makeshift dropper with a bottle cap containing .82 grams of a brown substance, and two small clear plastic bags with a white substance (.24 and .70 gross grams)." Gross said all the items in the vehicle belonged to him.  He admitted using "crystal" the previous day while he was in the vehicle, and identified the substance in the plastic baggies as methamphetamine.  He admitted to having heroin in the vehicle as well.

The prosecutor requested that Gross be placed in a residential treatment program, pointing out he had walked away from such a treatment facility before.[1]  The court permitted him to be released as requested.

Over the defense objection that Gross was homeless and lacked the ability to pay, the court ordered him to pay a total of $1194 as follows: an

---

[1]    The prosecutor told the court, "I don't think credit for time served is appropriate.  I think [Gross] clearly still obviously has his issues that have not been addressed since his [failure to appear].  So I do think [the court should release] him directly to a program again.  It makes no sense to me, when that was what everybody wanted, that he get treatment, because he [failed to appear] and walked away from a program[.]

$820 fine for his vehicle theft conviction (Veh. Code, § 10851, subd. (a)), a mandatory $40 court operations assessment (Pen. Code, § 1465.8), a mandatory $30 court facilities assessment (Gov. Code, § 70373), a restitution fine of $300 (Pen. Code, § 1202.4, subd. (b)), suspended until completion of probation, and an emergency medical transportation fee of $4 (Gov. Code, § 76000). The court left undetermined the amount of restitution owed to the victim.

The court did not require Gross to begin payment immediately: "The fines—right now I'll extend the payment for approximately six months. But I will set them at a minimum of $35 or more per month . . . [¶] . . . in hopes that [Gross] will become employed." The court confirmed with its clerk that the six-month grace period extended until January 17, 2023. Immediately afterwards the court stated, "I'll reserve as far as restitution."

Defense counsel renewed his objection that under *Dueñas*, *supra*, 30 Cal.App.5th 1157, Gross was unable to pay the fines, fees and assessments due to his homelessness and lack of employment. The court reiterated to defense counsel that Gross could revisit this issue at an appropriate time: "Well, how do I know if he does become employed? I mean, I have to find still that there's some kind of extraordinary circumstances. And—so I don't think that his being homeless right now means that he can't possibly pay [$]35 or more a month in the future. But I'll leave it open for you to advise him that if he[]—remains homeless, then it can be added on and readdressed."

Gross filed his notice of appeal on July 29, 2022, and his opening brief on November 4, 2022.

## I. *Dueñas Claim*

We disagree with Gross's claim the court was unaware of its discretion to waive the assessments or reduce his base fine because it relied on the

standard for determining restitution, or that it "refused to consider reducing any part of the total amount imposed believing that it had to find 'some kind of extraordinary circumstances' to do so." Gross contends the court erroneously relied on section 1202.4, subdivision (b), which states: "In every case where a person is convicted of a crime, the court shall impose a separate and additional restitution fine, unless it finds compelling and extraordinary reasons for not doing so and states those reasons on the record." He adds, "contrary to its belief, the trial court had the discretion to waive the assessments imposed in the amount of $74 and set the base fine to an amount lower than the $820 recommended by probation."

We conclude that nothing in the record shows the court was mistaken about its discretion, as it did not address the merits of the fines, fees and assessments individually at the restitution hearing. Rather, the court made it clear it would consider the *Duenas* request in six months. Also, understood in context, the court's reference to it needing to find "extraordinary reasons" related to the standard for imposing restitution at the hearing it had already postponed. We interpret the court's remarks to mean that if Gross at a future date pursued his inability to pay in a proper motion, then it would address the issue in the context of the pending restitution matter. Gross cites to no evidence in the record that he revisited the matter in the trial court as he was invited to do, or that he remains homeless and unable to pay the imposed fines, fees and assessments. We therefore have nothing to review, and appeal of this issue is premature.

## II. *Alcohol-Related Probation Conditions*

Gross contends the trial court abused its discretion when it imposed multiple probation conditions related to his use of alcohol. He argues the conditions are improper because alcohol played no role in the underlying

4

offense, alcohol is a legal substance, and there is no indication he ever abused alcohol. He contends the alcohol-related conditions are unreasonable under *Lent, supra*, 15 Cal.3d at page 486, because the underlying incident did not involve alcohol use and the record does not suggest he ever abused alcohol.

According to the probation report, Gross admitted using heroin three times a day, methamphetamine twice a day, and marijuana daily. He also admitted that he used "crystal" while inside of the vehicle he unlawfully took, and that he had heroin and methamphetamine with him at that time. Gross also admitted his addiction problem, referring to his heroin addiction as the "monkey on [his] back." Gross acknowledges the probation report also shows he "suffered several drug-related convictions from 2005-2006 when he was approximately 19 to 20 years old," and that "[b]y the time he turned 32 in 2018, his drug use had consumed him: he no longer could work and began engaging in drug-related, theft-type conduct."

At sentencing, Gross objected to all of the alcohol-related probation conditions requiring that he: not knowingly use or possess alcohol if directed; attend "[s]elf-help" meetings if directed; submit to testing; not be in places where alcohol is the main item for sale; and use a continuous alcohol-monitoring device if ordered.

The court ruled: "I think that the alcohol conditions are a source of abuse in addition to substances. So I think that it's best at this point that he not have any alcohol. So I am going to go ahead and impose those since he will be in residential treatment. I think that would defeat the purpose. [¶] And then he needs to enroll in and adhere to and complete a substance abuse treatment and recovery services."

Trial courts have broad discretion to impose reasonable conditions of probation that foster rehabilitation and protect the community. (Pen. Code,

5

§ 1203.1 subds. (a), (j); *People v. Carbajal* (1995) 10 Cal.4th 1114, 1120.)
" '[A] reviewing court will disturb the trial court's decision to impose a
particular condition of probation only if, under all the circumstances, that
choice is arbitrary and capricious and is wholly unreasonable.' " (*People v.
Bryant* (2021) 11 Cal.5th 976, 984.)

In order to invalidate a probation condition under *Lent*, the defendant
must make three showings:  1) the condition has no relationship to the crime;
2) the condition is related to conduct that is not itself criminal; and 3) the
condition is not reasonably related to his or her future criminality.  (*Lent,
supra,* 15 Cal.3d at p. 486.)  "The Lent test 'is conjunctive—all three prongs
must be satisfied before a reviewing court will invalidate a probation term.' "
(*In re Ricardo P.* (2019) 7 Cal.5th 1113, 1118 (*Ricardo P.*).)  The third prong
is at issue here.

In *Ricardo P.*, the California Supreme Court explained that the test of
reasonableness involves a balancing of factors.  "*Lent*'s third prong requires
more than just an abstract or hypothetical relationship between the
probation condition and preventing future criminality." (*Ricardo P.*, *supra*, 7
Cal.5th at p. 1121.)  Specifically, a probation condition cannot be justified
solely on the basis that it enhances the effective supervision of the
probationer without regard for the burden it places on the probationer.  (*Id.*
at pp. 1122, 1125.)  Rather, the "requirement that a probation condition must
be ' "reasonably related to future criminality" ' contemplates a degree of
proportionality between the burden imposed by the condition and the
legitimate interests it serves." (*Id.* at p. 1122.)

It may be appropriate to impose a probation condition that, although
not directly connected to the crime for which probation is granted, is related
to the probationer's personal and criminal history.  In *Ricardo P.*, the

6

Supreme Court reasoned "that 'conditions of probation aimed at rehabilitating the offender need not be so strictly tied to the offender's precise crime' [citation] so long as they are 'reasonably directed at curbing [the defendant's] future criminality.' " (*Ricardo P., supra,* 7 Cal.5th at p. 1122.) Indeed, the court noted that "courts may properly base probation conditions upon information in a probation report that raises concerns about future criminality unrelated to a prior offense." (*Ibid.*)

This Court stated in *People v. Beal* (1997) 60 Cal.App.4th 84, 87: "It is well documented that the use of alcohol lessens self-control and thus may create a situation where the user has reduced ability to stay away from drugs. [Citations.] Presumably for this very reason, the vast majority of drug treatment programs . . . require abstinence from alcohol use." (*Ibid.*) We concluded that "alcohol use may lead to future criminality where the defendant has a history of substance abuse." (*Ibid.*)

In *People v. Cota* (2020) 45 Cal.App.5th 786, 788, 792, we also upheld a probation condition restricting use or possession of alcohol where the defendant, who pleaded guilty to carrying a concealed dirk or dagger, admitted he was "a habitual user of methamphetamine and a daily user of marijuana." (*Id.* at pp. 788, 792.) Although the incident in *Cota* did not involve alcohol, we stated that "alcohol is a drug—albeit a legal one" and noted an empirical nexus between drugs and alcohol. (*Ibid.*) "It would make little sense to deprive [a defendant's] probation officer of the power to direct [a defendant] away from alcohol as a substitute mind-altering substance when his [or her] substance abuse history is so clearly demonstrated." (*Ibid.*) Given the defendant's history of drug use, we concluded the imposition of alcohol-related probation conditions was reasonably related to preventing future crimes. (*Ibid.*)

Likewise here, Gross admitted using drugs the day before he was arrested, and abusing illicit drugs on a weekly basis. He admitted the illicit drugs found in the car were his. Consistent with *People v. Beal, supra,* 60 Cal.App.4th 84 and *People v. Cota, supra,* 45 Cal.App.5th 786, the court found "the alcohol conditions are a source of abuse in addition to substances." The court also pointed to the fact it was releasing Gross to a residential treatment program as a basis for imposing the alcohol-related conditions. We agree with that reasoning, and conclude the court did not abuse its broad discretion in imposing the challenged conditions.

Gross relies on *People v. Cruz* (2020) 54 Cal.App.5th 707 (*Cruz*) and argues nothing in the record indicates he abuses alcohol or that alcohol played any kind of role in his committing the crime; and, an adult may legally use and possess alcohol. He adds that "he has never been accused of or convicted of an alcohol-related offense, he does not currently suffer from an alcohol abuse problem, and he has never had to undergo prior interventions for alcohol-related abuse. His problem is drugs, not alcohol."

In *Cruz,* the court struck an alcohol-related probation condition after finding "nothing in the record to indicate that appellant's use of marijuana played a role in his decision to steal the vehicle" or that "he was under the influence of marijuana at the time of his arrest, while still in possession of the vehicle." (*Cruz, supra,* 54 Cal.App.5th at p. 712.) The court further relied on the fact that marijuana is legal for adults (*id.* at p. 711) and that the defendant " 'has never been accused of or convicted of' a drug-related offense, 'he does not currently suffer from a substance abuse problem,' and he has 'never had to undergo prior interventions' for drug-related abuse." (*Id.* at p. 712.)

8

This case is distinguishable from *Cruz, supra,* 54 Cal.App.5th 707, as the probation report shows Gross has a long history of drug related offenses, and he admitted to the probation department that he had a long history of using alcohol and using and abusing other drugs, including prescription pain pills, marijuana, methamphetamine and heroin.  Further, Gross previously started but failed to complete a residential treatment program.  *Cruz* provides no basis to invalidate Gross's alcohol-related probation conditions.

## DISPOSITION

The judgment is affirmed.


O'ROURKE, J.

WE CONCUR:


McCONNELL, P. J.


IRION, J.

9